UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Paul Haines | Jeffrey Williams<br>Joseph Ozmer<br>Michael Kabat | |

**Proceedings:** DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. No. 36, filed April 6, 2015).

## I. INTRODUCTION

On September 2, 2014, plaintiffs Daisy Vazquez and Bryan Joseph filed this putative class action in Los Angeles County Superior Court. Defendants TWC Administration LLC, Time Warner Cable Inc., and Time Warner Cable NY LLC (collectively "defendants" or "Time Warner") removed the action to federal court on October 1, 2014. Dkt. No. 1. On February 2, 2015, plaintiffs filed the operative Second Amended Complaint ("SAC'). Dkt. No. 23. The SAC asserts claims for (1) failure to pay wages in violation of California Labor Code §§ 204, 510, 558, 1194, and 1198; (2) failure to pay wages in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; (3) failure to provide accurate itemized statements in violation of California Labor Code § 225, *et seq.*; (4) waiting time penalties under California Labor Code §§ 201–03; (5) unfair competition in violation of California Business & Professions Code § 17200, *et seq.*; and (6) penalties pursuant to California Labor Code § 2698, *et seq.*[1]

On April 6, 2015, defendants filed a motion for summary judgment or, in the alternative, partial summary judgment, attacking the legal sufficiency of plaintiffs' claims and plaintiffs' standing to bring them. Dkt. No. 36. Plaintiffs opposed the motion on April 13, 2015, and defendants filed a reply on April 20, 2015. Dkt. Nos. 41, 49. On

---

[1] Unless otherwise stated, all subsequent references to the "Labor Code" denote provisions of the California Labor Code.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

May 4, 2015, the Court held a hearing on the motion. For the reasons that follow, the motion is GRANTED.

## II.     BACKGROUND

The following facts are not in material dispute. Time Warner is in the business of providing cable, internet, phone, and other digital and entertainment services in at least twenty-nine states. SAC ¶ 3. Plaintiffs formerly worked for Time Warner in Los Angeles, California, and were not exempt from relevant laws requiring the payment of overtime wages. SAC ¶¶ 9–10; Defs.' Statement of Undisputed Facts ("SUF") ¶ 1; Pls.' Statement of Genuine Issues ("SGI") ¶ 1.

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), requires that employers pay non-exempt employees one-and-a-half times the "regular rate" for time worked in excess of forty hours in a workweek. California Labor Code § 510 requires employers to pay overtime compensation to an employee for "any work in excess of eight hours in one workday and any work in excess of 40 hours in any one work week . . . at the rate of no less than one and one-half times the regular rate of pay for an employee." Courts and the California Department of Labor Standards Enforcement ("DLSE") "look[] to FLSA standards to interpret the 'regular rate of pay' under California law."[2] Alonzo v. Maximus, Inc., 832 F. Supp. 2d 1122, 1129 (C.D. Cal. 2011) (citing Advanced-Tech Sec. Servs., Inc. v. Superior Court, 163 Cal. App. 4th 700, 707 (2008)). Under both California and federal law, "wages divided by hours equals regular rate." Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580 n.16 (1942), superseded by statute in other respects as stated in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985); see also Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945) (defining "regular rate" as "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed").

At all relevant times, Time Warner counted for overtime calculation purposes both the hours plaintiffs actually worked and paid time off ("PTO") for vacation, holiday, or personal reasons. SUF ¶ 2; SGI ¶ 2. Thus, even if plaintiffs did not actually work eight

---

[2]For this reason, both parties and this order engage in little separate discussion of regular rate calculation as mandated by California law as opposed to the FLSA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'     JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

hours in a day or forty days in a workweek, they could still be paid premium overtime compensation if they took in that workweek PTO that, when added to the hours worked, caused their total hours to exceed eight in a day or forty in a week. SUF ¶ 3; SGI ¶ 3.[3] Additionally, Time Warner included PTO in the number of total hours by which defendants would divide a non-exempt employee's non-overtime compensation to compute that employee's "regular rate" of pay. Plaintiffs do not contend that Time Warner ever counted PTO hours for purposes of calculating their regular rates of pay without also counting those hours in determining whether plaintiffs were entitled to overtime compensation and, if so, for how many hours. SUF ¶ 9; SGI ¶ 9.

      For the purposes of calculating overtime compensation, Time Warner uses a workweek that runs from Friday to Thursday. SUF ¶ 11; SGI ¶ 11. Time Warner utilized two-week periods for paying regular wages and overtime premiums for overtime hours worked during the workweeks in each pay period. SUF ¶ 12; SGI ¶ 12.

      Plaintiffs were subject to various compensation plans that included, in addition to their flat hourly wages, "Scorecard" compensation, which comprised commission and other incentives. SUF ¶ 13; SGI ¶¶ 13, 21. Illustratively, Joseph's commissions were "based on the dollar amount paid per installed core product [and] determined based on the total core products installed during a scorecard cycle." SUF ¶ 14; SGI ¶ 14. This Scorecard portion of Joseph's compensation was calculated separately for each Scorecard cycle based on his score on various performance benchmarks, such as productivity, average "handle time," and customer satisfaction. SUF ¶ 15; SGI ¶ 15. Per his compensation plan, a higher number of Scorecard points meant a higher commission level. SUF ¶ 16; SGI ¶ 16; Defs.' Response to Pls.' Statement of Genuine Issues ("RSGI") ¶ 16.

---

     [3]For example, during the workweek ending January 19, 2012, Vazquez worked five days and accrued 40.5 hours of on-the-job time, but also received eight hours of holiday pay for hours that she did not work, due to the Martin Luther King, Jr. Day holiday. SUF ¶ 4; SGI ¶ 4. Because Time Warner counts PTO in calculating overtime pay, Vazquez was paid for 40 hours at her non-premium rate of pay, and 8.5 hours at a premium overtime rate. SUF ¶ 5; SGI ¶ 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

  Commissions were calculated after the completion of each Scorecard cycle, which as relevant here ran from the 19th of one month to the 18th of the following month.  SUF ¶¶ 17, 18; SGI ¶¶ 17, 18.  Accordingly, these Scorecard cycles did not necessarily coincide with defendants' Friday through Thursday workweeks, and could start or end in the middle of a workweek.  SUF ¶¶ 19–20; SGI ¶¶ 19–20.  At the end of each Scorecard cycle, Time Warner calculated plaintiffs' Scorecard compensation and supplemented their overtime payments to account for that additional compensation, although plaintiffs assert that defendants did so incorrectly.  SUF ¶ 22; SGI ¶ 22.  Specifically, Scorecard incentive compensation for the fiscal month allocation period was divided evenly across the workweeks chronologically closest to that period.  SUF ¶ 23; SGI ¶¶ 23, 51; see Dkt. No. 41-1 (DuMond Report) at 4.  Defendants than paid plaintiffs the difference between the original overtime premiums paid and the higher, restated overtime premiums (which plaintiffs contend should have been still higher).  SUF ¶ 25; SGI ¶ 25.  Plaintiffs do not contend that any incentive payments were not allocated and incorporated into their regular rates in some fashion.  SUF ¶ 26; SGI ¶ 26.

  Ignoring the weeks in which plaintiffs were overpaid as a result of Time Warner's inclusion of PTO for determining hours worked, plaintiffs' expert calculates that including PTO hours in the regular rate calculation resulted in Vazquez being underpaid by a total of $12.54 over the course of twenty-seven weeks in which she earned overtime payments, and Joseph being underpaid by a total of $3.22 over the course of nine weeks in which he worked overtime.  DuMond Report at 10.  Plaintiffs' expert also calculates that Time Warner's method of allocating incentive pay across workweeks, compared to the method plaintiffs contend would have been proper, cost Vazquez $46.98 over the course of sixty-six weeks of economic loss, which was counterbalanced by a surplus of $11.36 over the course of thirty-three weeks of economic surplus, resulting in a total loss due to the alleged misallocation of $35.62.  Running the same calculation for Joseph, plaintiffs' expert concludes that Joseph was underpaid $3.45 as a result of the purported misallocation of incentive pay.  Id. at 11.

  Combining estimated losses from both complained-of policies and again excluding the overpayment to plaintiffs as a result of receiving overtime when they would not have under plaintiffs' proposed methodology, DuMond estimates Vazquez's "net loss" at $46.70 over the statute of limitations period, and Joseph's net loss at $6.26 over the same period.  Id. at 11.  Plaintiffs do not dispute that these alleged overtime underpayments were exceeded during the relevant period by the amount of overtime compensation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

plaintiffs received because of the inclusion of PTO hours in calculating for how many hours, if any, the plaintiffs were owed overtime compensation.[4]

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for

---

[4] See Opp'n Br. at 18–19 ("Admittedly, [Time Warner] is not required to include payments made for these non-working hours towards its employees' overtime eligibility . . . . [Time Warner] is correct in stating that over the course of the entire statute of limitations period, the amount of overtime wages that it paid to Plaintiffs is more than Plaintiffs would have received if [Time Warner] had not elected to include non-working hours towards its employees' overtime eligibility, but that point is irrelevant." (emphasis in original)). Because plaintiffs concede that the net effect of Time Warner's policy was to pay plaintiffs more than under the methodologies plaintiffs contend were required by law, the Court need not resolve plaintiffs' objections to the more precise calculations in the declaration of J. Scott Carr. The Court notes, however, that plaintiffs do not cite any authority for the proposition that relatively simply mathematical calculations such as Carr's can only be proffered by a qualified expert. See Vasserman v. Henry Mayo Newhall Mem'l Hosp., No. CV 14-6425 MMM (PLAx), 2014 WL 6896033, at *9 (C.D. Cal. Dec. 5, 2014) (rejecting evidentiary objection because simple calculations were not "beyond the common knowledge of the average layman" and the objector did "not explain why simple mathematical calculations constitute expert testimony").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

IV.   ANALYSIS

    A.   **Plaintiffs' "Hours Worked" Overtime Theory**

        1.   Explanation of the Theory

The first issue on which defendants seek summary judgment is plaintiffs' "hours worked" theory, in which plaintiffs contend that Time Warner miscalculated their overtime rates by including PTO hours in the denominator of regular rate calculations despite "regulations that clearly state the denominator must only include 'hours actually worked.'" Opp'n Br. at 1. This theory is based on a federal regulation providing in relevant part: "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109 (emphasis added). Plaintiffs reason that the plain meaning of the emphasized language prohibits including PTO hours—which are not "actually worked"—from the regular rate calculation. They assert that Time Warner's inclusion of PTO hours reduced their regular rates for weeks in which they (1) took paid time off, (2) worked overtime, and (3) received Scorecard and commission

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

payments that were factored into their regular rates, by increasing the number of hours over which incentive payments were divided.

    Defendants respond that section 778.109 must be read in conjunction with another FLSA regulation, which provides in relevant part:

> Payments which are made for occasional periods when the employee is not at work due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause, where the payments are in amounts approximately equivalent to the employee's normal earnings for a similar period of time, are not made as compensation for his hours of employment. Therefore, such payments <u>may</u> be excluded from the regular rate of pay under section 7(e)(2) of the Act and, for the same reason, no part of such payments may be credited toward overtime compensation due under the Act.

29 C.F.R. § 778.218(a) (emphasis added). Defendants argue that the word "may" indicates that exclusion of PTO hours from the regular rate of pay calculation exclusion is permissive, not mandatory. Defendants further contend that when read in conjunction with section 218(a), "it is clear that the intent of section 778.109 was only to prohibit an employer from including PTO in 'hours actually worked <u>in the event that</u> the employer has elected to exclude PTO from 'total remuneration' under section 778.218." Mot. Br. at 11 (emphasis in original). Defendants reason that section 778.109 is intended to prevent an employer from "exclud[ing] PTO payments from 'total remuneration' yet, at the same time, includ[ing] PTO hours in 'hours actually worked' "—and not to proscribe "the consistent, fair and highly beneficial treatment of PTO as 'hours worked' that [defendants have] implemented." <u>Id.</u> at 11–12. Because their policy included PTO hours not just in the regular rate calculation, but also in determining whether plaintiffs received overtime for "working" more than 8 hours in a day or 40 hours in a week, defendants contend that the method was consistent with the FLSA and applicable regulations. <u>Id.</u> at 9.

    Plaintiffs respond that in conjunction, sections 778.109 and 778.218 allow an employer to exclude PTO payments "from the numerator in the regular rate calculation," but do not permit the employer to include PTO hours "in the divisor" of that calculation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

Plaintiffs assert that this "one-way permission prevents an employer from manipulating the calculation to the employees' detriment, by artificially reducing the regular rate of pay." Opp'n Br. at 8.

    2. Discussion

At the outset, the Court notes the paucity of authority bearing on this issue. The parties appear to agree that an employer can voluntarily include pay for hours not actually worked in the regular rate of pay numerator, and case law supports that proposition. See O'Brien v. Town of Agawam, 482 F. Supp. 2d 115, 117 (D. Mass. 2007) ("[N]othing in the FLSA prevents an employer from voluntarily adding non-work pay to the regular rate." (citing Wheeler v. Hampton Twp., 399 F.3d 238, 244 (3d Cir. 2005))). But neither party has cited—and the Court has not found—any case law squarely addressing the issue of whether an employer may also include PTO hours in the divisor of the regular rate calculation for hourly employees.

In fact, plaintiffs do not cite any case law in support of their "hours worked" theory, relying solely on section 778.109.[5] Part 778 of the FLSA regulations is an "interpretive bulletin" that "constitutes the official interpretation of the Department of Labor with respect to the meaning and application of the maximum hours and overtime pay requirements contained in section 7 of the Act." 29 C.F.R. § 778.1. The rules contained therein do not have the force of law, but are entitled to "respect" as the DOL's "long-standing interpretation of the FLSA." Russell v. Wells Fargo & Co., 672 F. Supp. 2d 1008, 1011 n.1 (N.D. Cal. 2009); see Howard v. City of Springfield, 274 F.3d 1141, 1146 (7th Cir. 2001) (explaining that regulations in Part 778 are "not entitled to

---

[5]Plaintiffs also cite to the California DLSE's 2002 Enforcement Policies and Interpretations Manual [hereinafter "DLSE Manual 2002"] which provides: "The regular bonus rate is found by dividing the bonus by the total hours worked during the period to which the bonus applies." DLSE Manual 2002 § 49.2.4. This provision, however, by its terms applies to bonuses that "can be computed and paid with the wages for the pay period to which the bonus is applicable," which is not the case with the deferred incentive compensation at issue here. Even if it were applicable, this regulation lacks the force of law. Marin v. Costco Wholesale Corp., 169 Cal. App. 4th 804, 815 (2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'     JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

deference, although courts may rely on [them] as persuasive evidence of Congress's legislative and the Secretary's regulatory intent.").

     Defendants cite two cases in support of their position that, while not directly on point, arguably provide some interpretive guidance. Defendants first cite Aaron v. City of Wichita, 54 F.3d 652 (10th Cir. 1995), in which salaried, non-exempt firefighters argued that paid days off could not be included in the divisor of their regular rate calculations. The court held that those days "were simply another form of paid vacation" and—pursuant to the collectively bargained salaries the parties agreed should form the basis of the regular rate numerator—were "properly included in hours to be compensated by the regular bi-weekly salary." Id. at 654, 656. Aaron is arguably distinguishable because it applied a DOL regulation applicable only to salaried employees and providing that "the regular hourly rate of pay is computed by dividing the salary by the number of hours which the salary is intended to compensate." Id. at 655–56 (emphasis added) (quoting 29 C.F.R. § 778.113). Here, unlike in Aaron, the employer and employees never negotiated a fixed salary that could be "intended to compensate" certain types of non-working hours, and section 778.113 is not applicable. Still, section 778.109's articulation of the general regular rate formula does not limit itself to hourly workers or exclude salaried workers; rather, it states that section 778.113 is an "example" of the "proper method of determining the regular rate of pay in [a] particular instance[]." 29 C.F.R. § 778.109. At the very least, Aaron belies the argument that non-working hours cannot be included in the divisor of a regular rate calculation under any circumstances.

     Defendants also cite Duplesse v. County of Los Angeles, in which firefighters received a salary for scheduled hours, but hourly pay for fluctuating "unscheduled hours." 714 F. Supp. 2d 1045, 1047, 1049 (C.D. Cal. 2010). In calculating the regular rate to be used to determine overtime pay for hours worked in excess of 192 per twenty-four day "work period," the defendants summed "all of the employee's non-overtime earnings (including vacation pay, holiday pay and other pay for time not worked)" for that work period and divided that sum by "the number of hours 'worked' (as that term [was] defined in the [applicable memorandum of understanding])" in that same period. Id. at 1050. This divisor included time paid but not actually worked, such as sick leave and holiday shifts. Id. The court determined that this method of calculation did not violate section 778.109, and in doing so implicitly accepted the proposition that an employer may include in the regular rate denominator hours compensating the employee for time not actually at work, while also including the compensation for those non-work

Case 2:14-cv-07621-CAS-FFM   Document 63   Filed 05/04/15   Page 10 of 20   Page ID #:1727

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL       'O'    JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

hours in the numerator. See id. at 1055–56. However, unlike in this case, the Duplesse plaintiffs did not argue that the defendant's overtime calculations violated section 778.109 because of the inclusion of these non-work hours in the denominator.[6] In fact, because those non-work hours were paid at the higher of two hourly rates the plaintiffs received, id. at 1049–50, and the plaintiffs did not receive commission or bonus pay, such an argument would have made no sense because including the non-work pay and hours in the regular rate calculation could not decrease the regular rate for any work period.

     The only other arguably relevant case law the Court has found is Marin v. Costco Wholesale Corp., 169 Cal. App. 4th 804 (2008), in which the California Court of Appeal held under California law and the FLSA that vacation hours "paid but not worked, as well as total hours worked, can properly be included in the divisor when setting the regular rate" with regard to a productivity bonus based on hours compensated because such hours "contributed to the bonus." Id. at 817, 820. In that case, however, the bonus to be divided was based on hours paid, so that the vacation hours directly contributed to its amount. Here, PTO hours contributed to plaintiffs' eligibility for overtime, but did not factor into the amount of the incentive pay to be included in plaintiffs' regular rate of pay. Still, viewed as a whole, what little case law there is bolsters defendants' contention that it is permissible to include compensated non-work hours in the regular rate calculation, so long as the pay tied to those hours is also incorporated into that calculation.

     Additional (albeit similarly attenuated) support for this position can be found in an opinion letter issued by the Department of Labor. In that letter, the DOL considered a collective bargaining agreement providing "that certain vacation leave hours shall be considered hours actually worked in determining the overtime to be paid under the [collective bargaining agreement]." Dep't of Labor Opinion Letter of May 30, 1986, 1986 WL 1171134, at *1. The agency wrote:

> Where it is a custom or practice to pay employees for hours during which no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or

---

[6]Rather, they argued that the defendants were required to include additional bonuses in their regular rates.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

       other similar cause, as those terms are explained in section 778.218 . . . it is permissible (but not required) for the employer to <u>count those hours as hours worked</u> in determining whether overtime pay is due.

<u>Id.</u> at *2 (emphasis added). Admittedly, this opinion letter states that non-work hours can be counted "as hours worked" for "determining whether overtime pay is due," not for calculating the regular rate. Still, it casts further doubt on plaintiffs' contention that "hours actually worked" must be given plaintiffs' controlling meaning. Moreover, informing the party that had requested the opinion letter that their system appeared to comply with the FLSA, the DOL did not caution that an employer including non-work hours in the overtime must not also include those hours in the regular rate calculation.

      Defendants also persuasively argue that section 778.109 should not be read to proscribe the challenged policy because including PTO hours in the numerator and denominator of regular rate calculations can only reduce an employee's compensation for a workweek in which she receives overtime pay for working longer than eight hours in a day (which triggers overtime compensation under California law), and not when she receives overtime pay for "working" longer than forty hours in a workweek (which triggers overtime compensation under both federal and California law). Defendants highlight that for every workweek plaintiffs' expert identifies as underpaid due to the "hours worked" policy, that underpayment related to daily, not weekly, overtime. <u>See</u> Reply at 6 (citing DuMond Report Ex. B). This is because under defendants' system, the inclusion of PTO can only reduce an employee's overtime compensation in weeks that she (1) earns incentive compensation, (2) takes PTO, (3) accrues daily overtime, and (4) does not accrue additional weekly overtime as a result of the inclusion of PTO as "hours worked." <u>Id.</u> at 5–6. Given that plaintiffs' theory relies exclusively on a DOL regulation interpreting the FLSA, that the practice they challenge can only lead to underpayment under state law dramatically weakens plaintiffs' theory. Moreover, although plaintiffs are correct that overtime must be calculated and paid on a workweek-by-workweek basis, the undisputed fact that defendants' policy has resulted in a net overpayment of overtime for both plaintiffs further weighs against the persuasive force of plaintiffs' interpretation.

      Because plaintiffs cite no authority in support of their "hours worked" liability theory other than a non-binding interpretive regulation that appears unlikely to have been issued with the challenged practice in mind, and because what little case law there is on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

related issues appears to cut against plaintiff's interpretation, the Court concludes that defendants cannot be held liable under the FLSA or California law incorporating FLSA standards for their practice of counting PTO hours in both the numerator and denominator of regular rate calculations. Accordingly, the Court **GRANTS** summary judgment on each of plaintiffs' claims insofar as they are premised on this theory.

### B.  Plaintiffs' "Misallocation" Overtime Theory

Plaintiffs' second theory proceeds from the facts that plaintiffs worked varying hours during Time Warner's defined Friday-through-Thursday workweeks, and received Scorecard incentive payments determined for periods running from the 19th of one month to the 18th of the next, so that these "Scorecard cycles" often began and ended in the middle of defined workweeks. Plaintiffs argue that because the Scorecard cycles did not coincide with plaintiffs' workweeks, defendants were required "to first calculate, and allocate, the bonus and commission to the actual working hours within that Scorecard Cycle before calculating the regular rate for the workweek"—rather than allocating the incentive compensation evenly across the five workweeks chronologically closest to the Scorecard Cycle. Opp'n at 4. Plaintiffs contend that defendants' equal allocation across workweeks had the effect of shifting some incentive pay earned during weeks in which the plaintiffs worked overtime to weeks in which the plaintiffs did not work overtime. See DuMond Report at 7–9. Therefore, they contend, the regular rate was artificially lowered for workweeks in which plaintiffs (1) worked overtime and (2) worked more hours than in the average of the workweeks covered by the applicable Scorecard Cycle. Plaintiffs maintain that because Time Warner tracks the number of hours worked on a daily basis, defendants could have and should have determined the number of hours worked during each Scorecard Cycle and allocated incentive pay evenly among those hours for overtime calculation purposes.[7]

---

[7] Defendants argue that plaintiffs changed their misallocation theory on the eve of summary judgment, and that the Court should not consider their characterization of it under Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000) (affirming dismissal of liability theory not pled or otherwise raised before summary judgment). Although plaintiffs' interrogatory responses arguably failed to paint a clear picture of the methodology plaintiffs now contend should have been used, defendants were indisputably put on notice of the methodology plaintiffs advance in their opposition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'     JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

      According to plaintiffs' retained expert, defendants' improper allocation methodology "affects any workweek in which the employee worked overtime and earned Incentive Pay, where the workweek does not coincide exactly with" a Scorecard cycle, which occurred in approximately two-thirds of plaintiffs' workweeks during the relevant time period. DuMond Report at 10. DuMond admits that Time Warner's method does not result in a lower regular rate calculation as compared to plaintiffs' methodology in every week; in fact, it resulted in a higher regular rate for Vazquez in thirty-three weeks (compared to sixty-six weeks with a lower rate), and for a higher rate for Joseph in twelve weeks (compared to eighteen weeks with a lower rate). Id. at 10–11. Still, DuMond contends that Time Warner's allocation system "systematically understates Plaintiffs' overtime pay compared to an allocation method that is based on actual work hours, since the number of overtime hours is positively and statistically significantly correlated with work hours." Id. at 10. As stated above, plaintiffs estimate that their proposed method would have resulted in Vazquez being paid $35.62 more, and Joseph being paid $3.45 more, over the relevant time period. Id. at 11.

      Plaintiffs cite no case law in support of their misallocation theory, but instead rely again on their reading of the DOL's interpretive regulations. The Court analyzes plaintiffs' theory separately with regard to commission compensation and other Scorecard incentive payments that plaintiff terms "bonus" compensation.

      1.     Commission Payments

      Under some compensation plans, commission is paid on a weekly basis, and can be added to the employer's other earnings when the employee is paid for that workweek. See 29 C.F.R. § 778.118. However,

> If the calculation and payment of the commission cannot be completed until sometime after the regular pay day for the workweek, the employer may disregard the commission in computing the regular hourly rate until the amount of

---

before defendants filed their motion for summary judgment. For this reason, the Court considers the merits of plaintiffs' opposition on the misallocation theory rather than holding plaintiffs to defendants' interpretation of plaintiffs' prior discovery responses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

>commission can be ascertained. . . . When the commission can be computed and paid, additional overtime compensation due by reason of the inclusion of the commission in the employee's regular rate must also be paid. To compute this additional overtime compensation, it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period during which it was earned. The employee must then receive additional overtime compensation for each week during the period in which he worked in excess of the applicable maximum hours standard.

Id. § 778.119. The DOL's regulation on "deferred commission payments not identifiable as earned in particular workweeks" provides that "[i]f it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of omission actually earned or reasonably presumed to be earned in each week, some other reasonable and equitable method must be adopted." Id. § 778.120. The same regulation approves the following methods:

>(a) Allocation of equal amounts to each week. Assume that the employee earned an equal amount of commission in each week of the commission computation period and compute any additional overtime compensation due on this amount.
>
>. . . .
>
>(b) Allocation of equal amounts to each hour worked. Sometimes, there are facts which make it inappropriate to assume equal commission earnings for each workweek. For example, the number of hours worked each week may vary significantly. In such cases, rather than following the method outlined in paragraph (a) of this section, it is reasonable to assume that the employee earned an equal amount of commission in each hour that he worked during the commission computation period. The amount of the commission payment should be divided by the number of hours worked in the period

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

> in order to determine the amount of the increase in the regular
> rate allocable to the commission payment.

Id.

Plaintiff argues that defendants violated these regulations because "a true proportional workweek allocation is required unless the employer can prove that it is 'not possible or practicable' to do so." Opp'n Br. at 15. Plaintiffs also point out that the method they assert should have been used—dividing commissions across the hours within a Scorecard cycle, rather than the workweeks that fell within or overlapped with the Scorecard cycle—is approved by section 778.120(b). Id. at 15–16.[8] But in conjunction, these arguments are puzzling. Section 778.120 approves dividing commission equally across hours worked within a commission calculation period as one of two "reasonable and equitable method[s]" that might be appropriate if "it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of omission actually earned or reasonably presumed to be earned in each week." The method Time Warner used instead—dividing the commissions evenly across workweeks—is approved by section 778.120(a) as another exemplar of what might be a reasonable and equitable method in a situation in which commissions cannot practicably be apportioned to the actual workweeks in which they were earned. Therefore, if defendants' method for allocating commissions is impermissible because it was in fact "practicable" to allocate those commissions across

---

[8]Plaintiffs characterize their methodology as "allocat[ing] bonus and commissions to the actual working hours it was earned." Opp'n Br. at 15. But their method does not actually do so; rather, it assumes that the commissions were earned evenly across all hours worked in the Scorecard cycle. See id. at 5 ("To comply with the law, [defendants] needed to simply total all Scorecard bonus and commissions during a Scorecard Cycle, divide it by the hours actually worked in that same cycle, and allocate the amount of bonus/commission earned to each of those hours. For example, if one of the plaintiffs earned $300 in 'Scorecard' bonus and commissions by only working thirty hours during that Scorecard Cycle, the plaintiff would have $10.00 in commissions/bonuses allocated to each hour of work . . . ."). This may be a more precise method of estimation, but it is not a method for allocating incentive payments to the "actual working hours" in which such payments were earned.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'   JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

the weeks in which they were actually earned, plaintiffs' proposed method would be impermissible as well. Moreover, defendants offer an unrebutted explanation for why commissions could not practicably be assigned to the workweek in which they were actually earned: commissions are earned on the installation date, which can be separated from the sale date by weeks and can occur while employees are not working, and cannot be calculated until the end of the fiscal month cycle because of the Scorecard system.

Plaintiffs also argue that their methodology was required because it was unreasonable to assume that plaintiffs earned equal commission amounts in each workweek "due to the variance in working hours, amounts earned, and the overlap between Scorecard cycles and workweeks." Opp'n Br. at 17. In support, they point to their expert's calculation that, while employed by defendants, Vazquez worked an average of 36.25 hours per week, with a standard deviation in weekly hours of 8.01, and Joseph worked an average of 38.73 hours, with a standard deviation of 5.89 hours. See DuMond Report at 12 & Ex. B. Plaintiffs' expert also calculated that Vazquez's monthly incentive pay averaged $405.73 during her employment, with a standard deviation of $283.06, and Joseph's monthly incentive pay averaged $537.69, with a standard deviation of $344.76. See id. Plaintiffs argue that because of this variation, an hours-based method of allocating commission had to be used.

Defendants respond that their method was reasonable and equitable, and therefore lawful. In support, they cite a DOL opinion letter stating:

> section 778.120 of 29 CFR Part 778 permits a choice of allocating equal amounts of commission either to each workweek or to each hour worked. Once the choice has been made, the method of allocation may not be changed in a way which has the intent or effect of evading the regular rate requirements of section 7(i).

Dep't of Labor, Opinion Letter of July 13, 1982, 1982 WL 213487, at *1 (emphasis added); see also Ming W. Chin, et al., Rutter California Practice Guide: Employment Litigation § 11:961 ("Where commissions cannot be apportioned to particular workweeks in which [they were] earned, the commissions are apportioned on an average basis to the total period of weeks in which [they were] earned to yield an average weekly commission." (citing 29 C.F.R. § 778.120)). Defendants contend that their methodology

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

was reasonable and equitable because it is endorsed by section 778.120, and that they are not required to show that it is <u>more</u> reasonable or equitable than plaintiffs' proposed methodology. Further, defendants argue that their method is simpler to administer than plaintiffs', and that assuming incentive pay was earned evenly across the workweeks in each Scorecard cycle was reasonable because plaintiffs generally worked approximately eight hours a day and forty hours a week, and much of the variation in working hours to which plaintiffs point comes from taking paid time off or working limited overtime. Defendants argue that such variation "cannot be the deciding factor because <u>all</u> types of non-exempt employees take time off and work overtime." Reply Br. at 15–16 (emphasis in original).

Defendants have the better of the argument. For the reasons stated above, by arguing for equal division across hours, plaintiffs effectively concede that commissions could not practically be allocated to the workweeks in which the commissions were "actually" earned. Therefore, plaintiffs' argument boils down to the proposition that defendants' method, expressly approved by section 778.120 and described as a permissible "choice" in a DOL opinion letter, was unlawful in this instance because the other example given by section 778.120 would have resulted in plaintiffs being paid a few dollars more per year. Plaintiffs cite no authority in support of this argument. Simply put, where commission cannot be precisely allocated to the workweeks in which it was earned, the regulation on which plaintiffs rely does not require that an employer use the best possible estimation method from an employees' perspective, but rather one that is reasonable and equitable. On the undisputed facts, the Court concludes that there is no triable issue of fact as to whether defendant's allocation methodology was reasonable and equitable. Accordingly, the Court **GRANTS** defendants' motion for summary judgment on plaintiffs' misallocation theory as it pertains to commissions.

2. Scorecard Bonus Payments

Similarly, bonus payments considered part of an employee's regular rate are sometimes not calculated until after other workweek compensation is paid. In this situation:

> the employer may disregard the bonus in computing the regular hourly rate until such time as the amount of the bonus can be ascertained. Until that is done he may pay compensation for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

> overtime at one and one-half times the hourly rate paid by the employee, exclusive of the bonus. When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week.

29 C.F.R. § 778.209(a). DOL regulations also speak to the "[a]llocation of bonus where bonus earnings cannot be identified with particular workweeks":

> If it is impossible to allocate the bonus among the workweeks of the period in proportion to the amount of the bonus actually earned each week, some other reasonable and equitable method of allocation must be adopted. For example, it may be reasonable and equitable to assume that the employee earned an equal amount of bonus each week of the period to which the bonus relates, and if the facts support this assumption additional compensation for each overtime week of the period may be computed and paid in an amount equal to one-half of the average hourly increase in pay resulting from bonus allocated to the week, multiplied by the number of statutory overtime hours worked in that week. Or, if there are facts which make it inappropriate to assume equal bonus earnings for each workweek, it may be reasonable and equitable to assume that the employee earned an equal amount of bonus each hour of the pay period and the resultant hourly increase may be determined by dividing the total bonus by the number of hours worked by the employee during the period for which it is paid.

Id. § 778.209(b).

      Although plaintiffs stress that the DOL issued separate interpretive regulations for commissions and bonus, plaintiffs' theory fails with regard to bonuses for essentially the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

same reasons it fails with regard to commissions. Although plaintiffs argue that it was not "impossible to allocate the bonus among the workweeks of the period in proportion to the amount of the bonus actually earned each week," the method plaintiffs insist should have been used (equal division across hours) is one of two methods the applicable regulation approves when such an actual allocation cannot be made. The applicable regulation also expressly states that defendants' chosen method of dividing bonus equally among workweeks "may be reasonable and equitable," and the Court is not persuaded that such a method was unreasonable in this circumstance merely because plaintiffs sometimes worked slightly more or less than forty hours per week, or took paid time off. Indeed, that the regulation on which plaintiff relies is an overtime regulation and contemplates bonuses being impossible to precisely allocate presumes some level of variation in both hours work and compensation received. Moreover, plaintiffs cite no relevant legal authority in support of their position aside from 778.209 itself, which uses conditional and permissive language. See id. ("[I]f there are facts which make it inappropriate to assume equal bonus earnings for each workweek, it may be reasonable and equitable to assume that the employee earned an equal amount of bonus each hour of the pay period and the resultant hourly increase may be determined by dividing the total bonus by the number of hours worked by the employee during the period for which it is paid." (emphasis added)).[9] For these reasons, plaintiffs' argument that defendants were legally required to divide bonus incentives on an hourly basis fails, and the Court **GRANTS** summary judgment on each of plaintiffs' claims to the extent they are premised on this theory.

    C.    **Plaintiffs' "Piece-Rate" Theory**

In addition to their overtime-related theories, the SAC asserts that Time Warner was required to, and failed to, provide wage statements that itemized the transactions for which plaintiffs earned commissions. The SAC alleges that the " 'commissions' are in fact piece-rate wages, since their value is set according to a predetermined per-unit schedule, and not the total value" of sales. SAC ¶¶ 16. It also alleges that Time Warner "fail[ed] to list the number of piece-rate units and respective piece-rates sold for the mislabeled 'commissions.' " Id. ¶ 21(d). Defendants moved for summary adjudication

---

[9]As indicated in note 5, *supra*, the passage from the 2002 DLSE Manual that plaintiffs cite is inapposite.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 2:14-cv-07621-CAS(FFMx) | Date | May 4, 2015 |
|---|---|---|---|
| Title | DAISY VAZQUEZ, ET AL. v. TWC ADMINISTRATION LLC, ET AL. | | |

of this theory. Mot. at 18–20. In their opposition brief, plaintiffs concede that this theory "may be dismissed." Opp'n at 23. Accordingly, the Court **GRANTS** defendants' motion insofar as it seeks to dismiss the piece-rate theory of liability.

## V.    CONCLUSION

As set forth above, defendants are entitled to summary judgment on each of plaintiffs' three liability theories. Because none of these liability theories is viable, each of plaintiffs' claims for relief must be dismissed. Accordingly, defendants' motion for summary judgment is **GRANTED** in its entirety.

IT IS SO ORDERED.

|  | 00 | : | 08 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |